UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:16-CV-00069

HURLEY HOLLAND                                                                    PLAINTIFF

v.

LVNV FUNDING, LLC                                                              DEFENDANT

**Memorandum Opinion**

This matter is before the Court upon Defendant LVNV Funding, LLC's Motion to Compel Arbitration. [DN 10.] Plaintiff Hurley Holland has responded, [DN 12], and LVNV has replied, [DN 15]. Additionally, this Court granted Holland leave to file a sur-reply, which he did. [DN 18.] LVNV responded to Holland's sur-reply. [DN 20.] Fully briefed, this matter is ripe for adjudication. For the following reasons, LVNV's Motion to Compel Arbitration [DN 10] is GRANTED, and this case is dismissed.

**I. Facts and Procedural History**

In March 2014, Plaintiff Hurley Holland opened a credit card account with Credit One Bank, N.A. *See* [DN 1 at 3.] Holland used the card to make "personal, family, and household purchases . . . ." [DN 1 at 3.] Holland's relationship with Credit One was governed by the Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement (the "Agreement"). [DN 20-1.] Among other things, the Agreement states, "The Arbitration Agreement provided to you with this Agreement governs the enforcement by you and us of your and our legal rights under this Agreement." [*Id*. at 4.] The arbitration provision itself is located at the end of the Agreement. In a section entitled "Claims Covered," the Agreement provides:

> Claims subject to arbitration include, but are not limited to . . . collection matters relating to your account; . . . the application, enforceability or interpretation of this Agreement, including this arbitration provision; and any other matters relating to your account, a prior related account or the resulting relationships between you and us.  Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow.
>
> Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your account, your agent, representative or heirs, or a trustee in bankruptcy.  Similarly, Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors (and the employees, officers, and directors of all of these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly named at the time the Claim is made.
>
> Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory relief).  Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship.

[*Id.* at 6.]

Eventually, Holland defaulted on his credit card debt, resulting in Credit One charging off his account.[1]  Pursuant to a series of self-executing agreements, Credit One assigned a number of charged-off accounts, including Holland's, to FNBM, LLC.  *See* [DN 10-2; DN 10-4 (listing accounts).]  Then, on January 16, 2015, a series of transactions occurred.  FNBM sold the charged-off accounts to Sherman Originator III LLC ("Sherman III"), [DN 10-2], and Sherman III sold the accounts to Sherman Originator LLC ("Sherman Originator"), [DN 10-3].  In turn,

---

[1] A "charge off" occurs when a bank declares a credit card debt uncollectible, "usually because of cardholder bankruptcy, debt or prolonged delinquency . . . ."  U.S. Gov't Accountability Office, GAO-09-748, Fair Debt Collection Practices Act Could Better Reflect the Evolving Debt Collection Marketplace and Use of Technology (2009), at 5.

Sherman Originator sold the accounts to LVNV, the entity that currently holds Holland's debt. [DN 10-3.]

On August 5, 2015, LVNV filed suit against Holland in Graves County, Kentucky District Court, seeking to collect Holland's outstanding credit card debt. [DN 1 at 3.] The parties soon entered into an Agreed Judgment in Graves District Court on August 26, 2015. [DN 1-1.] The judgment awarded LVNV "the principal sum of $719.17 together with interest from date of judgment on the principal balance at the rate of 12.00% per annum[.]" [*Id*. at 1.] LVNV "agree[d] to limit execution of the . . . judgment to the filing of a Notice of Judgment Lien" as long as Holland made $50.00 monthly payments to LVNV's counsel. [*Id*.] Holland made four such payments totaling $200.00. [DN 1 at 4.] Pursuant to the judgment, LVNV filed a lien on Holland's real property on November 15, 2015. [DN 1-2.] The Notice of Judgment Lien calculated the amount owed as follows:

| | |
|---|---|
| Total judgment amount as of November 04, 2015: | $661.76 |
| Principal amount: | $632.67 |
| Accrued interest: | $16.09 |
| Interest rate: | 12.000% |
| Costs: | $13.00 |
| Attorney fees: | $0.00 |

[*Id*. at 1.]

Holland filed the instant action on May 10, 2016, alleging that LVNV's Notice of Judgment Lien violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* [DN 1.] Because, according to Holland, the Agreed Judgment "did not award LVNV its court costs or any other post judgment costs," [*id*. at 1], LVNV violated the FDCPA in two ways. First, he alleges that LVNV wrongfully "included the [$13.00] lien recording fee it paid to the Graves County Clerk" in the Notice of Judgment Lien. [*Id*. at 2.] Second, he alleges that LVNV wrongfully "applied $113.50 of the $200.00 paid by Mr. Holland towards the Agreed Judgment

3

to recover its court costs," [*id*. at 4], and failed to "properly file and serve a bill of costs pursuant to Ky. R. Civ. P. 54.04," [*id*. at 2].   Additionally, Holland alleges that LVNV engages in "a pattern and practice" of violating the FDCPA by routinely seeking to collect costs and fees to which it is not entitled, and asserts a cause of action on behalf of all similarly situated Kentucky consumers.  [*Id*. at 2.]

LVNV answered the complaint, [DN 4], and shortly thereafter filed this motion to compel arbitration, [DN 10].   Holland responded,[2] [DN 12], and LVNV replied, [DN 15]. Additionally, Holland filed a motion for leave to file a sur-reply and a proposed sur-reply memorandum.  [DN 16; DN 18.]  The Court granted Holland's motion, [DN 21], and LVNV responded to Holland's sur-reply, [DN 20].  This matter is therefore ripe for adjudication.

As explained in the following pages, LVNV's motion [DN 10] is GRANTED.  The Federal Arbitration Act evidences a strong federal policy in favor of arbitration.  In keeping with that policy, whenever a party moves to compel arbitration pursuant to a contractual provision, courts engage in limited review to see if a valid arbitration agreement exists, and if the particular dispute falls within the scope of that agreement.  *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).  If the answer to both questions is yes, the Federal Arbitration Act requires the court to compel the parties to arbitration.  9 U.S.C. § 4.  In this case, Holland's Cardholder Agreement with Credit One provided that either party could elect to send "any controversy or dispute" to arbitration.  [DN 20-1 at 6.]  As Credit One's ultimate assignee, LVNV possesses the right to compel arbitration of this dispute, which falls within the scope of the Agreement's

---

[2] Along with his response, Holland filed a motion asking this Court to hold LVNV's Motion to Compel Arbitration in abeyance and to permit Holland to conduct discovery relevant to that motion.  [DN 13.]  LVNV responded to that motion. [DN 19.]  However, following briefing on LVNV's Motion to Compel Arbitration, during which LVNV attached several exhibits, the parties agreed during a telephonic conference to set aside Holland's motion as moot. *See* [DN 22.]  Therefore, this matter is properly before the Court.

arbitration provision.  Because all of Holland's claims must proceed to arbitration, the Court may properly dismiss Holland's case.

## II. Standard of Review

The Federal Arbitration Act provides that a written agreement to arbitrate disputes arising out a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to enforce an arbitration agreement may request that litigation be stayed until the terms of the arbitration agreement have been fulfilled.  *Id.* § 3.  Upon such application, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4.

Before compelling arbitration, the Court "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). Such review requires the Court to determine (1) whether "a valid agreement to arbitrate exists between the parties," and (2) whether "the specific dispute falls within the substantive scope of the agreement." *Id.* (quoting *Javitch*, 315 F.3d at 624).  With respect to the arbitration agreement's validity, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate."  *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks and citations omitted).  With respect to the agreement's scope, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that

the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650 (1986) (internal citations and quotation marks omitted).   In other words, keeping in mind the "strong federal policy in favor of arbitration . . . any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration," *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000), especially when the arbitration clause is written broadly to encompass all claims arising under the contract, *AT & T Techs.,* 475 U.S. at 650.

### III. Discussion

This case involves a familiar scenario.   Hurley Holland incurred credit card debt which, for one reason or another, he did not pay.   Credit One, Holland's original creditor, sold his debt, and after a series of transactions, LVNV now holds it.   LVNV sued Holland in state court to recover the debt, and the parties negotiated a settlement.   In this suit, Holland alleges that LVNV violated the terms of the state court settlement, and in doing so, also violated the Fair Debt Collection Practices Act.   LVNV now seeks to invoke the arbitration provision contained in the Cardholder Agreement between Holland and Credit One.   Because that arbitration provision is valid, and because Holland's FDCPA suit falls within its scope, LVNV can.   Furthermore, because all of Holland's claims are subject to arbitration, dismissal is the proper remedy.

In 1925, Congress enacted the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, in response to the common law hostility toward arbitration and the refusal of many courts to enforce arbitration agreements.   The Supreme Court has stated that the FAA codifies "a national policy favoring arbitration when the parties contract for that mode of dispute resolution," *Preston v. Ferrer*, 552 U.S. 346, 349 (2008), and places arbitration agreements "upon the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v.*

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).   The FAA establishes a procedural framework applicable in both federal and state courts.   *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).   When a party to an arbitration agreement petitions a court to order a dispute into arbitration, as LVNV does here, that framework requires the court to answer two questions.   First, based upon state law, was the parties' agreement to arbitrate valid?   9 U.S.C. § 4; *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).   Second, if the agreement was valid, does the underlying dispute fall within the scope of the arbitration agreement?   *Id.*   The Court will address these questions in turn.

A. Validity of the Agreement to Arbitrate

The Cardholder Agreement between Credit One and Holland provides that either party may elect to submit any dispute to binding arbitration.   Holland admits that he had a contractual relationship with Credit One, and LVNV has provided the Agreement that governed Holland's account.   By its terms, the Agreement applies not only to Credit One, but also its successors in interest.   Therefore, under the terms of the Agreement and Kentucky law, the arbitration agreement is valid, and LVNV is entitled to invoke the arbitration provision.

To decide whether this dispute should be submitted to arbitration, the Court must first determine whether "a valid agreement to arbitrate exists between the parties . . . ."   *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)).   "[T]he FAA preempts state laws and policies regarding arbitration[,]" but "[s]tate contract law . . . governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses."   *Fazio v. Lehman Bros.*, 340 F.3d 386, 392–93 (6th Cir. 2003) (citations

omitted).  Even when applying state contract law, "due regard must be given to the federal policy favoring arbitration . . . ."  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 475-76 (1989)).  "When the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit."  *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks and citations omitted).

Holland contests the validity of the Cardholder Agreement's arbitration provision in several ways.  His first argument stems from the fact that LVNV has tendered two different Cardholder Agreements, claiming that both governed Holland's account.  Attached to LVNV's original motion was an Agreement containing the date "08/14" at the foot of the document.  [DN 10-5 at 7.]  The parties agree that Holland opened his Credit One account in March 2014.  [DN 15-1 at 1; DN 18 at 3.]  It therefore stands to reason, as Holland argues, that the August 2014 Agreement could not have governed Holland's account, because it was created after his account was opened.  *See* [DN 18 at 3.]  Indeed, in response to LVNV's motion [DN 10], Holland states via affidavit:

> 3. I have been shown by my legal counsel a credit card agreement from Credit One Bank, N.A. which has been filed as an exhibit in my lawsuit by LVNV Funding, LLC in support of its motion filed in this case to compel the court to order my claim against LVNV Funding, LLC to be arbitrated.
>
> 4. I have carefully examined the aforementioned written Credit One credit card agreement filed by LVNV Funding, LLC in support of its motion to compel arbitration, and I have attached the document I so examined to this, my affidavit, as an appendix, and I hereby incorporate it by reference.[3]
>
> 5. After carefully examining the Credit One credit card agreement aforementioned, I can say unequivocally and conclusively that I have never seen that agreement, that I never received that agreement, and that I did not, and do

---

[3] Despite this statement, the 2014 Agreement was not actually attached to his affidavit.

not, agree to its provisions, terms, promises, duties, obligations, and more particularly the arbitration provision set out in it.

[DN 12-1 at 1-2.]   As Holland's counsel said in a later filing, "Mr. Holland stated in his declaration [that] he was never provided with, saw or agreed to [the August 2014 Agreement] at the time he opened his Credit One Bank, N.A. account or at any time prior to it being closed by Credit One Bank." [DN 18 at 3 (emphasis removed).]

Before compelling arbitration, the Court must "be[] satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4. Typically, "[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits . . . should be sufficient to require a jury determination on whether there had in fact been a meeting of the minds." *Mazera v. Varsity Ford Mgmt. Serv., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980)). Here, Holland denies by affidavit that the August 2014 Agreement governed his account. [*See* DN 12-1.] Importantly, though, Holland has not stated unequivocally that he never received *any* Cardholder Agreement. Rather, his affidavit pertains only to the August 2014 Agreement originally proffered by LVNV. [DN 10-5.] In fact, in the following passage, Holland's counsel arguably concedes that a cardholder agreement of some sort existed:

> Even so, [LVNV's equitable estoppel] argument is baseless since it is predicated on the objectively false premise that, *because Mr. Holland acknowledges that a credit card agreement existed between Mr. Holland and Credit One Bank, N.A.* he cannot challenge:
>
> 1. whether LVNV has acquired that agreement by purchase and assignment; or
>
> 2. whether the agreement proffered is "the" governing agreement Mr. Holland agreed to when he opened his Credit One Bank account on March 27, 2014.

[DN 18 at 6 (emphasis added).] Additionally, alongside its most recent filing, LVNV submitted an undated Cardholder Agreement, [DN 20-1], which it claims predated the August 2014

Agreement, [DN 20 at 4, n. 1].  Notably, the arbitration provisions of both proffered agreements are identical.  *See* [DN 10-5 at 6-7; DN 20-1 at 6-7.]

As the party resisting arbitration, Holland bears the burden of showing a genuine dispute of material fact regarding the validity of the agreement to arbitrate.  *Simons*, 288 F.3d at 889.  Holland's affidavit might be enough to put into issue the validity of the August 2014 Agreement, but Holland has not denied that LVNV's second proffered agreement governed his Credit One account.  Rather, Holland's affidavit disclaims only the applicability of the August 2014 Cardholder Agreement, and not LVNV's second tendered agreement.  Furthermore, Holland admits in his Complaint that he "used the Credit One account exclusively for personal, family, and household purposes . . . ."  [DN 1 at 3.]  In turn, the Agreement states that by using the Credit One account, the consumer assents to the terms of the Agreement.  *See* [DN 20-1 at 2.]  Under Kentucky law, a party can be bound to a contract when his actions indicate acceptance of the contract's terms.  *See, e.g.*, *Polly v. Affiliated Computer Servs., Inc.*, Civil Action No. 10-135-ART, 2011 WL 93715, at *2 (E.D. Ky. Jan. 11, 2011) ("Kentucky courts will also enforce unsigned arbitration agreements where the parties have indicated acceptance of the contract through their actions.").  Holland's affidavit does not create a factual issue regarding the arbitration agreement's validity.

Additionally, the doctrine of equitable estoppel prevents Holland from avoiding arbitration by denying he received the Agreement.  Equitable estoppel prevents "a plaintiff who seeks a benefit of a contract in a lawsuit [from] escap[ing] . . . that contract's other provisions—including its arbitration provision."  *Caudill v. Cavalry SPV I, LLC*, Civil No. 14-32-ART, 2014 WL 4230811, at *5 (E.D. Ky. Aug. 25, 2014) (citing *Javitch*, 315 F.3d at 629).  Stated otherwise, "When each of a signatory's claims against a nonsignatory makes reference to or presumes the

existence of the written agreement, the signatory's claims arise[ ] out of and relate[ ] directly to the [written] agreement, and arbitration is appropriate." *Hagan v. Greenpoint Credit Corp.*, Civil Action No. 07-17-KKC, 2007 WL 2258866, at *8 (E.D. Ky. Aug. 3, 2007) (alterations in original) (quoting *MSDealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

In *Caudill v. Cavalry SPV I, LLC*, the court held that equitable estoppel prevented the plaintiff from disclaiming the arbitration provision of the credit card agreement, when his FDCPA claims were premised upon the defendant's violation of that same agreement. *Caudill*, 2014 WL 4230811, at *5-6. However, Holland has pled his case differently than Caudill. While Caudill asserted that the defendant violated both the credit card agreement and the FDCPA by charging him unlawful interest, *id.* at *1, Holland claims that LVNV violated the FDCPA attempting to collect costs and expenses that the state court judgment did not award, [DN 1 at 5]. Because his "claims are rooted solely in the Agreed Judgment," Holland claims that equitable estoppel does not apply. [DN 18 at 7.]

This argument is creative, but unavailing. Contrary to what Holland claims, at least one of his FDCPA claims is premised upon the existence of the Agreement. [DN 1 at 9 ("Defendant LVNV's violations of the FDCPA include, but are not limited to . . . Violation of 15 U.S.C. § 1692f(1) by the collection or attempt to collect an amount . . . when such amount is not expressly authorized by an agreement creating the debt or permitted by law.").] Moreover, while Holland may be suing under the FDCPA because of LVNV's alleged violations of the Agreed Judgment, that judgment was entered because of Holland's unsatisfied debt held by LVNV. *See* [DN 1-1.] That debt arose as a result of Holland's contractual relationship with Credit One, a relationship governed by the Cardholder Agreement. Therefore, it can fairly be said that Holland's claims, at the very least, "presume[] the existence of the written agreement . . . ." *Hagan*, 2007 WL

2258866, at *8.  As such, equitable estoppel prevents Holland from disclaiming the Agreement that governs the relationship that he admits exists.

Holland's second argument against the validity of the Agreement's arbitration provision stems from his assertion that "LVNV only purchased receivables from its assignors, not contract rights."  [DN 12 at 1.]  According to Holland, Credit One initially assigned only "receivables" to FNBM, [*id*. at 5]; thus, FNBM could assign to its successors in interest no more rights than what it possessed, *see* [*id*. at 4].  Therefore, all that LVNV could now possess is the right to receive payment on Holland's original debt.  Holland contends that assignment in this manner severs the right to receive payment from the other contractual rights contained in the Agreement, including the arbitration provision.  [*Id*. at 7-8.]  Because LVNV holds only receivables, Holland claims, it may not enforce the arbitration provision.

In response, LVNV disputes Holland's contention that LVNV purchased only receivables.  [DN 15 at 5.]  Even if it did, LVNV argues, it could still enforce the arbitration provision, because the weight of authority holds that the sale of accounts receivable also transfers the right to compel arbitration under the original debt contract.  [*Id*.]  Holland is correct that the "Bill of Sale and Assignment" from FNBM to Sherman III contains a certification from Credit One that "[t]he Receivables assigned under the terms of this Bill of Sale were originated or acquired by Credit One Bank, N.A. and have previously been assigned to FNBM, LLC . . . ." [DN 10-2.]  Ultimately, however, this Court need not resolve the dispute regarding whether LVNV wound up with all of Credit One's rights, or just the right to receive payment.  Either way, the outcome is the same.  The very first paragraph of the Agreement provides that "[t]he words . . . 'we,' 'us,' 'our,' and 'Credit One Bank' refer to Credit One Bank, N.A., its successors or assigns."  [DN 20-1 at 2.]  Furthermore, the arbitration agreement provides that claims

involving "any predecessors and successors" of Credit One are subject to arbitration.   When contractual terms are unambiguous, Kentucky law requires them to be interpreted in accordance with their plain meaning.   *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). "Assigning [the Agreement's] language its ordinary meaning," the arbitration provision unambiguously extends to LVNV, Credit One's ultimate successor in interest.   *Id.*

Holland does not argue that the terms of the Agreement are ambiguous.   Rather, he argues that, as a matter of contract law, an assignee of receivables is not entitled to enforce the original creditor's arbitration clause.   But under Kentucky law, "the rights of an assignee are subject to . . . all the terms of the contract between the account debtor and assigner and any defense or claim in recoupment arising from the transaction that gave rise to the contract . . . ." KRS § 355.9-404.   *See also Madison Capital Co., LLC v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 933 (W.D. Ky. 2011) ("When an assignment occurs, the assignee simply stands in the shoes of the [assignor], subject to all equities and defenses which could have been asserted against the assignor." (internal quotations and citations omitted)).   This statute extends to the assignee of accounts receivable.   *See First Nat. Bank of Louisville v. Master Auto Serv. Corp.*, 693 F.2d 308 (4th Cir. 1982).

*First National Bank* involved the sale of automobile tires by a Kentucky manufacturer, International Rubber Industries, to a Virginia retailer, Master Auto.   *Id.* at 310.   Many of the tires were defective and were returned under warranty to Master Auto for adjustment.   *Id.*   Pursuant to the Dealer Agreement between IRI and Master Auto, IRI would credit Master Auto's account for adjustments made to the defective tires.   *Id.* at 310-11.   After IRI's bankruptcy, First National Bank became the assignee of IRI's accounts receivable, and filed suit to collect from Master Auto the amount owed on the defective tires.   *Id.* at 311.   In turn, Master Auto claimed that it had

not been fully credited for the defective tires it had adjusted.  *Id*.  Interpreting KRS § 355.9-404, the Fourth Circuit held that IRI's accounts receivable held by the Bank were subject to the terms of the underlying Dealer Agreement between IRI and Master Auto.  *Id*. at 314.  Therefore, the Bank's claim against Master Auto was set-off by the amount of credit Master Auto was owed under the Dealer Agreement.  *Id*.

Similarly, the weight of authority holds that "a transfer of accounts receivable includes the transfer of the underlying contractual terms, including arbitration provisions . . . ."  *Martin v. Cavalry SPV I, LLC*, Civil No. 13-88-GFVT, 2014 WL 1338702, at *6 (E.D. Ky. Mar. 31, 2014) (listing cases).  Because "arbitration is a contractual remedy, not an obligation," *Systran Financial Services Corp. v. Giant Cement Holding, Inc.*, 252 F. Supp. 2d 500, 505 (N.D. Ohio 2003), either the finance assignee or the account debtor may invoke the arbitration provision against the other, *GMAC Commercial Credit LLC v. Springs Industries, Inc.*, 171 F. Supp. 2d 209, 214-18 (S.D.N.Y. 2001).  For example, in *Systran Financial Services*, the court allowed a debtor to compel arbitration against the party who purchased its creditor's accounts receivable. 252 F. Supp. 2d at 506.  Likewise, in *Franklin v. Midland Funding, LLC*, No. 3:10-CV-91, 2010 WL 3931106, at *2-3 (N.D. Ohio Oct. 6, 2010), the court found that the defendant, a debt collector who had purchased the plaintiff's debt, could compel the plaintiff's common-law misrepresentation suit against the defendant to arbitration under the terms of the original loan agreement.  That is essentially what LVNV seeks to do in this case.

Holland points to only one case purporting to hold to the contrary, *Munoz v. Pipestone Financial, LLC*, 397 F. Supp. 2d 1129 (D. Minn. 2005).  Like Holland, Munoz brought an FDCPA suit against the company who held his credit card debt, alleging that the company was attempting to collect interest and attorney fees to which it was not entitled.  *Id*. at 1130.  But the

similarities between *Munoz* and the instant case end here.  The court in *Munoz* was considering the defendant's motion for summary judgment, not a motion to compel arbitration.  *Id*. Moreover, the court was addressing only "whether the term 'receivables' included the right to collect interest and attorney fees[]" under the original cardholder agreement, ultimately concluding it did not.  *Id*. at 1131-32.  The court did not address whether, after purchasing only receivables, the defendant could compel arbitration.  Indeed, the word "arbitration" appears nowhere in the *Munoz* opinion.  Holland's contention that "[t]he sale of a receivable does not include the transfer of contract rights[]" simply misstates the holding of *Munoz*.  [DN 12 at 8.]

More apposite are three cases from this Court's sister court, in which Holland's counsel unsuccessfully advanced similar arguments.  In the first, *Martin v. Cavalry SPV I, LLC*, Civil No. 13-88-GFVT, 2014 WL 1338702, at *1 (E.D. Ky. Mar. 31, 2014), the plaintiff claimed that the defendant violated the FDCPA by illegally attempting to collect her credit card debt and by charging unlawful interest.  The defendant, Cavalry, moved to compel arbitration pursuant to the credit card agreement.  *Id*.  Martin argued, as does Holland, that Cavalry had purchased only an account receivable from Martin's original creditor, GE Capital Retail Bank, and thus could not invoke the arbitration provision.  *Id*. at *2.  The court held that, under the terms of the credit card agreement and under Kentucky law, "a valid agreement to arbitrate existed between the parties because the right to invoke arbitration was transferred from GE to Cavalry when Cavalry purchased the right to collect on Martin's debt."  *Id*. at *8.

Similarly, in *Caudill v. Cavalry SPV I, LLC*, Civil No. 14-32-ART, 2014 WL 4230811, at *1 (E.D. Ky. Aug. 25, 2014), the plaintiff sued Cavalry, the eventual holder of his credit card debt to GE Capital Retail Bank, alleging that Cavalry charged interest that violated the credit card agreement and the FDCPA.  Cavalry and its co-defendant, an affiliated debt collector,

moved to compel arbitration pursuant to the original agreement between Caudill and GE Capital, with Caudill claiming that the defendants' purchase of receivables did not entitle them to invoke the arbitration clause. *Id*. at *3. The Eastern District of Kentucky again ruled for the defendants, holding that under the terms of the credit card agreement, any of GE Capital's successors in interest were entitled to compel arbitration, even if they held only the account receivable. *Id*. at *3.

The third case, *Stratton v. Portfolio Recovery Associates, LLC*, __ F. Supp. 3d __, 2014 WL 1092606, at *1 (E.D. Ky. Mar. 21, 2016), *appeal docketed*, No. 16-5468 (6th Cir. Apr. 15, 2016), is procedurally distinct from the instant case, but also involves an FDCPA suit. In *Stratton*, the defendant, PRA, purchased the plaintiff's charged-off credit card debt from GE Money Bank and filed a collection action in Kentucky state court. *Id*. Stratton filed suit in federal court, alleging that PRA's state court action violated the FDCPA.[4] *Id*. On cross-motions for summary judgment, the court ruled in favor of PRA, holding that PRA did not attempt to collect interest to which it was not entitled. *Id*. at *15. In doing so, the court rejected for a third time the argument that purchase of receivables excludes the assignment of contractual rights, adopting the reasoning of the *Martin* and *Caudill* courts. *Id*. at *6-7. *Stratton* is currently pending on appeal before the Sixth Circuit.

Three different judges sitting in the Eastern District of Kentucky have previously rejected the arguments advanced by Holland's counsel. This Court now joins them. Holland is correct that LVNV is not a signatory to his cardholder Agreement with Credit One. He may even be correct that LVNV owns only his account receivable. But in the end, regardless of LVNV's status as a non-party to the Agreement, and regardless of the quantum of rights it holds, LVNV

---

[4] The court originally dismissed Stratton's claims, but the Sixth Circuit reversed that dismissal. *Stratton v. Portfolio Recovery Assoc., LLC*, 770 F.3d 443 (6th Cir. 2014).

can still compel arbitration under the Agreement.  When a creditor assigns its right to receive payment on an outstanding debt, the assignee stands in the shoes of the assignor with respect to the debt.  Here, LVNV, as Credit One's ultimate assignee, can assert the same rights against Holland as Credit One could have asserted.  This includes the right to compel arbitration.  The plain text of the Agreement, Kentucky law, and the weight of authority all compel this result.

Third, Holland claims that the documentation provided by LVNV, particularly the Agreement, is hearsay.  *See, e.g*, [DN 12 at 5.]  "[S]ummary judgment rulings must be based on admissible evidence," *Turner v. Scott*, 119 F.3d 425, 430 (6th Cir. 1997), and as such, "hearsay evidence cannot be considered on a motion for summary judgment" unless an exception to the hearsay rule applies, *Wiley v. United States*, 20 F.3d 222, 226.  The standard of review for a motion to compel arbitration and a motion for summary judgment are essentially identical, *see Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002), so presumably the Agreement must fall under a hearsay exception in order for the Court to consider it in ruling on this motion.

Here, the Agreement is admissible as a business record.  Rule 803(6) provides that business records are admissible if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

17

Fed. R. Evid. 803(6). "A custodian or otherwise qualified witness must attest that the proffered document meets these conditions." *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1072 (6th Cir. 2014). In this case, LVNV submitted the affidavit of Vicki Scott, Credit One's Vice President of Collections. [DN 15-1.] Scott testifies that she has personal knowledge of the records maintained by Credit One, and states that the Agreement meets the requirements of Rule 803(6). [*Id*. at 2.] Scott also states that Credit One provided LVNV with the Agreement pertaining to Holland's charged-off account. [*Id*.] LVNV also tendered the affidavit of Megan Emmerich, Senior Manager in Litigation at Resurgent Capital Services, LP, and an authorized representative of LVNV. [DN 15-2.] Emmerich completes the Agreement's chain of custody, stating that it is LVNV's regular practice to obtain, review, and retain the cardholder agreements pertaining to the charged-off accounts LVNV purchases. [*Id*. at 2.]

Via these affidavits, LVNV has shown that the Agreement meets the first four requirements of Rule 803(6). Thus, the onus is upon Holland to show that the Agreement lacks trustworthiness. On this point, Holland's only substantial argument is that LVNV originally provided a credit card agreement other than the one governing Holland's account. [DN 18 at 3.] As explained above, the Agreement originally provided by LVNV appears to have been published in August 2014, after Holland opened his account with Credit One. [DN 18 at 3.] However, LVNV attached to its final brief "the agreement as it existed pre-August 2014," [DN 20 at 4, n. 1], and that agreement is the one the Court has considered in ruling upon this motion, *see* [DN 20-1]. Thus, even if LVNV initially provided the wrong cardholder agreement, Holland has suffered no prejudice. Holland having shown no other substantial grounds calling into question the Agreement's trustworthiness, the Court finds that it is admissible under Rule 803(6) as a business record. *See Caudill v. Cavalry SPV I, LLC*, Civil No. 14-32-ART, 2014 WL

4230811, at *4 (E.D. Ky. Aug. 25, 2014) (business record exception applies to cardholder agreement).

In sum, Holland presents no genuine issue of material fact with respect to the validity of the arbitration agreement.  Holland admits "that a credit card agreement existed" between himself and Credit One, [DN 18 at 6], and LVNV has provided that Agreement, accompanied by affidavits establishing that the Agreement provided is the one that governed Holland's account, *see* [DN 20-1; DN 15-1; DN 15-2].  The Agreement provides that, by using his credit card, Holland accepted the Agreement's terms, including the arbitration provision.  Holland cannot escape arbitration by disclaiming the Agreement while simultaneously suing LVNV for violating the FDCPA in the course of recovering the debt Holland incurred under the Agreement.  Nor does Holland's argument concerning "receivables" carry any weight.  Even if LVNV holds only Holland's debt to Credit One, and nothing else, it can still invoke the Agreement's arbitration provision.

## B. Scope of the Arbitration Agreement

Having found that the agreement to arbitrate is valid, the Court must now decide whether "the specific dispute falls within the substantive scope of the agreement." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)).  Holland, as the party seeking to avoid arbitration, bears the burden of showing that the arbitration clause contained in the Agreement does not cover this dispute. *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91–92 (2000).  Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–2.

In this case, as LVNV points out, Holland has not argued that his case falls outside the scope of the Agreement's arbitration provision. *See* [DN 15 at 2.] Even if he had, his argument would be unavailing. Here, the arbitration clause contained in the Agreement provides that "any controversy or dispute . . . [may] be submitted to mandatory binding arbitration." [DN 20-1 at 6.] Additionally, the Agreement specifically states that "disputes relating to . . . collections matters relating to your account" are subject to arbitration, regardless of the cause of action. [*Id*.] Finally, the Agreement requires that any claims subject to arbitration "must proceed on an individual basis[,]" and not as a class action. [*Id.*]

In the face of these broadly-written clauses, Holland has not come forward with "any express provision excluding [his] particular grievance from arbitration . . . [or] forceful evidence of a purpose to exclude the claim from arbitration . . . ." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 585-85 (1960). The plain language of these contractual terms is sufficiently broad to encompass Holland's FDCPA suit. After all, this suit is premised upon Holland's allegation that LVNV violated the FDCPA in the process of collecting the debt Holland occurred under the Agreement. Presented with no compelling reason to depart from precedent or from the plain language of the Agreement, Holland's FDCPA suit falls within the scope of the arbitration agreement. *See Martin v. Cavalry SPV I, LLC*, Civil No. 13-88-GFVT, 2014 WL 1338702, at *9 (E.D. Ky. Mar. 31, 2014) ("Courts resolving similar disputes involving broad arbitration provisions in credit card agreements routinely find that claims concerning alleged violations of the FDCPA and state usury laws are subject to the arbitration provision in the credit card agreement.").

C. Remedy

A valid agreement to arbitrate existed between Holland and Credit One, and Holland's claims fall within the scope of that agreement.  As the assignee of some, if not all, of Credit One's rights under the Agreement, LVNV has the right to compel arbitration of this dispute pursuant to the Agreement's terms.  Therefore, 9 U.S.C. § 3 provides that the court must stay all further proceedings until arbitration concludes.  However, as this Court has previously recognized, several circuit courts, including our own, hold that when all the plaintiff's claims are subject to arbitration, dismissal is the proper remedy.  *Braxton v. O'Charley's Restaurant Properties, LLC*, 1 F. Supp. 3d 722, 728-29 (W.D. Ky. 2014) (detailing circuit split and listing cases); *see Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) ("[Plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district courts to stay suits pending arbitration rather than dismiss them. We have already rejected that argument."); *Hensel v. Cargill, Inc.*, 198 F.3d 245, 1999 WL 993775, at *4 (6th Cir. 1999) (unpublished table decision) ("Under § 3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is mandatory. However, litigation in which all claims are referred to arbitration may be dismissed.").  Because the Court is satisfied that all of the Plaintiffs' claims are subject to arbitration, it will dismiss this action, rather than stay these proceedings.

**IV. Conclusion**

Underlying the "strong federal policy favoring arbitration," *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000), is the basic principle that consenting, competent parties should be able to contract between themselves to achieve any objective that is not prohibited by law and does not offend public policy.  That is precisely what occurred here.  Hurley Holland entered into

a contractual relationship with Credit One, and the Cardholder Agreement governing that relationship allows Credit One and its successors in interest to submit any disputes to arbitration. Holland and other consumers like him may be surprised to learn that, as a matter of everyday life, they routinely agree to have their legal disputes resolved in a forum other than a court of law.  But courts consistently uphold arbitration provisions like the one at issue in this case, and Holland has presented this Court with no compelling reason to buck that trend.

Moreover, Holland's case does not end here.  As the Supreme Court has stated, "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  Holland will still have the opportunity to litigate his FDCPA claims, and he may very well be successful. But in light of the Federal Arbitration Act and the parties' Agreement, a federal court is not the proper forum for this dispute.

An appropriate order will follow.

CC: Counsel of Record